AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.

JOHN LEE

*Defendant(s)*

Case No. 8:22-mj-2127-SPF

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 2022 - August 2022 in the county of Polk in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343; | Wire fraud; |
| 18 U.S.C. § 1341; and | Mail fraud; and |
| 18 U.S.C. § 2314 | Interstate transportation of stolen goods |

This criminal complaint is based on these facts:

See attached affidavit.

❒ Continued on the attached sheet.

Matthew Brooks
*Complainant's signature*

Matthew L. Brooks, Special Agent, HSI
*Printed name and title*

Sworn before me over the telephone and signed pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 11/21/2022

*Judge's signature*

City and state: Tampa, Florida

Sean P. Flynn, U.S. Magistrate Judge
*Printed name and title*

Print | Save As... | Attach | Reset

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Matthew L. Brooks, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been so employed since February 24, 2011. Prior to that, from 2006 until 2011, I was employed with the Department of Immigration and Customs Enforcement as an Immigration Enforcement Agent with the Tampa field office. I have received specialized training in the enforcement of federal laws, and I have been involved in all aspects of financial investigations, narcotics trafficking investigations, money laundering investigations, and conspiracy and complex investigations, including the debriefing of defendants, witnesses, and informants, visual and electronic surveillance, and analysis of documentary and physical evidence.

2. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for violations of federal law.

3. This Affidavit is submitted in support of an application for a criminal complaint and arrest warrant for JOHN LEE ("LEE"). As detailed throughout, LEE, through false and fraudulent pretenses, representations, and promises, convinced Victim 1 to mail approximately $90 million worth of jewelry belonging to Victim 2 to him at addresses in Davenport, Florida and Paramus, New Jersey. Additionally, LEE transported and transferred and caused to be transported and transferred in

interstate and foreign commerce items of jewelry that he knew were stolen or taken by fraud.

4. This Affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant. It does not set forth all of my knowledge about this matter. The facts in this affidavit come from my personal observations, my training and experience, information obtained from other law enforcement officers, and interviews of witnesses during the investigation. Based on my training, experience, and the facts in this Affidavit, there is probable cause to believe that within the Middle District of Florida and elsewhere, LEE violated multiple federal criminal laws, including 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 2314 (interstate transportation of stolen goods).

## PROBABLE CAUSE

5. The primary focus of this ongoing investigation is LEE, a.k.a. "Giovanni," a resident of Florida and the authorized member of "Gifted Life Coach LLC." LEE advertises himself as a psychic on various websites, such as www.purplegarden.co ("Purple Garden").

6. As detailed further below, "Purple Garden" is a website that allows customers to communicate with psychic advisors. Customers pay the psychic advisor based on the amount of time they communicate in the "Purple Garden" private chat spaces. The psychic advisors provide a range of services to customers, including mediumship, tarot card reading, and love, relationship and career advice.

7. In or around August 2022, the FBI Tampa Field Office ("FBI TFO") received information that Victim 1 mailed packages of jewelry from Doha, Qatar to an individual in Davenport, Florida. Victim 1 also mailed packages of jewelry from Doha, Qatar to Paramus, New Jersey. While in France, Victim 1 made an audio recorded statement and provided a typed statement to Victim 1's employer ("Victim 2") and Victim 2's legal representative from Doha, Qatar. Counsel for Victim 2 shared Victim 1's recorded statement and typed statement with other members of Victim 2's legal team, including private counsel in the United States. Victim 2's legal representatives in the United States provided the recorded statement and typed statement to FBI TFO. To date, FBI TFO has not yet been able to interview Victim 1.

Victim 1's Statement

8. The typed statement shared with FBI TFO relayed the following information:

a. Victim 1, a resident in Doha, Qatar, worked for Victim 2 for many years.

b. In or around August 2018, Victim 1 began using the website Purple Garden for relationship and love advice.

c. In or around April 2019, Victim 1 began corresponding with an individual on Purple Garden who used the username "1111Giovanni1111." Victim 1 believed "1111Giovanni1111" to be a psychic and a love specialist. Victim 1 knew "1111Giovanni1111" as "Giovanni," "Gio," and "John Lee."

d. In or around December 2019, LEE provided Victim 1 with contact information and began corresponding via email, text messaging, and WhatsApp, rather than solely through Purple Garden. LEE provided Victim 1 with his email address, lifecoachgiovanni@gmail.com, and his phone numbers, +1 862 4770532 and +1 9735188999.

e. LEE provided Victim 1 with his Money Service Business 1 ("MSB-1") account information as well as his Financial Institution 1 ("FI-1") account information for payment for his services. Victim 1 sent money to LEE's MSB-1 account for a period of time, until he requested Victim 1 send the money directly to his FI-1 account in order to avoid MSB-1 fees.

f. Victim 1 met with LEE in person on at least one occasion in New York prior to June 2022.

g. During Victim 1's correspondence with LEE, he provided Victim 1 guidance in his capacity as a psychic.

h. In or around June 2022, LEE directed Victim 1 to send him some of Victim 1's personal jewelry to be cleansed. Victim 1 sent the jewelry to him in the hope that he could cleanse the jewelry of bad spirits. Victim 1 believed LEE received Victim 1's jewelry and conducted the spiritual actions he promised, before he returned the jewelry to Victim 1.

i. After Victim 1's jewelry was returned, Victim 1 continued to experience negative feelings. LEE convinced Victim 1 to send him jewelry belonging to Victim 2, so he could also cleanse Victim 2's jewelry of bad spirits. Victim 1 agreed to send LEE jewelry belonging to Victim 2.

j. Victim 1 removed the items of jewelry from a safe in the home of Victim 2 and sent them via FedEx to LEE. Victim 1 addressed the packages to "John Lee" and sent them to "1070 Berry Lane, Davenport, Florida 33857" and to "50 Route 17th North, Paramus, Suite 135, New Jersey 07652."

k. LEE told Victim 1 that the jewelry would not be returned until August 2022. However, a couple of days before the jewelry was to be returned, LEE told Victim 1 that Customs would seize the jewelry if it was mailed back. LEE directed Victim 1 to meet him in Cannes, France to personally retrieve the jewelry. However, LEE did not meet Victim 1 in Cannes to return the jewelry.

l. Victim 1 made several attempts to contact LEE through phone calls, text messages, and through Purple Garden. LEE responded to Victim 1 on rare occasion. For instance, on or about August 23, 2022, Victim 1 communicated with LEE via text message requesting LEE return the jewelry. LEE responded, "Please stop I do not know what you were talking about I don't

think you need a psychic you need a psychiatrist God bless you please stop harassing me."

m. After several failed attempts to retrieve the jewelry from LEE, Victim 1 told Victim 2 about the theft.

<u>Identifying LEE</u>

9. After receiving Victim 1's statement, FBI TFO began an investigation of LEE. "1111Giovanni1111" has a public profile with a profile picture on Purple Garden. *See* Image 1. Victim 1 provided a screenshot of a video chat between Victim 1 and LEE. *See* Image 2. These images were compared with the Florida Driver's License photo for LEE. *See* Image 3. Based on a comparison of the images, I believe that the individual utilizing username "1111Giovanni111" and captured on the video chat with Victim 1 is LEE.




*Image 1*



*Image 2 [Victim 1 image redacted]*



*Image 3*

10. While LEE's Florida driver's license lists a residential address in Deerfield Beach, Florida, his mailing address registered with the Florida Department of Highway Safety and Motor Vehicles is 1070 Berry Lane, Davenport, Florida.

11. LEE has at least five vehicles registered in his name. As recently as November 1, 2022, the title for one of the vehicles registered to LEE, a 2007 Bentley, lists the address 1070 Berry Lane, Davenport, Florida.[1]

12. The address, 1070 Berry Lane, Davenport, Florida, is the same address Victim 1 relayed that LEE provided to Victim 1 to be used as the recipient address for some of the packages of jewelry.

13. LEE communicated with Victim 1 in several ways, including via email from lifecoachgiovanni@gmail.com. Records from Google showed the subscriber for this email account is "Giovanni" with a recovery SMS number of +19735188999. This is the same phone number LEE provided to Victim 1 as his direct phone number.

14. Additionally, records from Google showed that on or about June 14, 2022, the email account, lifecoachgiovanni@gmail.com, was accessed from an Internet Protocol Address ("IPA") serviced by Frontier Communications.

15. Records from Frontier Communications showed this IPA was subscribed to by S.L. (LEE's daughter) at 1070 Berry Lane, Davenport, Florida.

<u>Purple Garden, Purple Ocean, and Ingenio, LLC</u>

16. Ingenio, LLC is an online marketplace for the exchange of information and consultations with counselors, coaches, guides, and spiritualists through phone, chat, and video. Ingenio, LLC operates Purple Garden (www.purplegarden.co),

[1] LEE previously owned a 2014 Porsche that also listed this address on the vehicle registration.

Purple Ocean (www.purpleocean.co), Keen (www.keen.com), and other similar online platforms.

17. According to the Ingenio, LLC website, Purple Ocean is a mobile application for spiritual advice from psychics who offer video readings on relationships, careers, and other areas of life. Keen is an online spiritual and emotional advice platform. Purple Garden is described above in paragraph 6.

18. Ingenio, LLC owned Keen from at least as early as 2005. Ingenio, LLC acquired the Purple Garden and Purple Ocean platforms, as well as others, in 2020.

19. Subscriber records provided by Ingenio, LLC showed that the Keen account for username "1111Giovanni1111" was associated with the email address giftedgiovanni@icloud.com (believed to be LEE's iCloud address).[2] This account was created at least as early as September 2009. Based on the information received to date, I believe "1111Giovanni1111" belongs to LEE.

20. On or about January 17, 2018, LEE's account with Keen was disabled when an employee discovered the identifiers used to create LEE's account did not match LEE. Specifically, the social security number that was provided for LEE belonged to a female, even though the individual using the account was a male.

[2] The email address giftedgiovanni@icloud.com is associated with an Apple device assigned Verizon phone number 973-219-9486. The subscriber for this phone number is "John Lee." Additionally, the phone number 973-219-9486 and the email address giftedgiovanni@icloud.com are listed on LEE's MSB-1 account ending in 4163. Details of the MSB-1 account ending in 4163 are described below.

21. Subscriber records provided by Ingenio, LLC showed that the advisor nickname "1111Giovanni1111" on the Purple Garden and Purple Ocean platforms is associated with the individual "John Lee" who has the same date of birth as LEE and an MSB-1 email address lifecoachgiovanni@gmail.com (believed to be LEE's email account). This account was activated at least as early as October 16, 2018.

22. Additionally, Ingenio, LLC records showed that LEE received a payment for a chat with a customer on or about August 14, 2022. The customer paid $29.97 for a 144 second chat. Victim 1 provided screenshots of a conversation that took place on or about August 14, 2022 with 1111Giovanni1111 on the Purple Garden platform. *See* Image 4. Victim 1 also provided a screen shot of the duration of the chat and fee. *See* Image 5. Victim 1 was charged $29.97 for a 2:24 (144 seconds) chat.




*Image 4*




*Image 5*

23. Ingenio, LLC disabled LEE's accounts on all Ingenio, LLC platforms in or about October 2022.

24. Agents served Ingenio, LLC with a preservation letter on or about August 26, 2022. On or about October 28, 2022, a federal search warrant was authorized for the search of LEE's Ingenio, LLC accounts.

<u>MSB-1 Records</u>

25. Records from MSB-1 show that LEE has multiple accounts with MSB-1. Victim 1 also has a MSB-1 account.

26. Victim 1 sent payments from Victim 1's MSB-1 account to at least two of the accounts owned and controlled by LEE.

27. "John Lee" with LEE's date of birth, social security number, and email address (lifecoachgiovanni@gmail.com) is the registered user for MSB-1 account ending in 4820. This MSB-1 account is linked to Financial Institution 3 ("FI-3") account ending in 7006. On or about November 27, 2021, LEE opened an account with FI-3 ending in 9336. He was issued a CashBack Debit card ending in 4784 for this account. On or about July 1, 2022, LEE obtained a replacement card for his account ending in 9336. The last four digits of the replacement card issued by FI-3 to LEE are 7006.

28. "John Lee" with Lee's date of birth, social security number, and iCloud email address (giftedgiovanni@icloud.com) is the registered user for MSB-1 account ending in 4163. This MSB-1 account is linked to the same FI-3 account described

above in paragraph 27. Additionally, this account is linked to the Financial Institution 2 ("FI-2") (formerly FI-1) account further described below ending in 1434.

29. LEE's MSB-1 account ending in 4820 is the primary account through which LEE received payments from Ingenio, LLC. These payments were for services provided on the Purple Garden and/or Purple Ocean websites and were deposited into LEE's MSB-1 account with a "subject" line describing the purpose of the payments. Each "subject" line indicates the amount of the payment as well as a "withdrawal number." For example, on or about August 16, 2022, "Purple Ocean sent [LEE] $68.04, withdrawal #213854."

30. On or about October 14, 2020, Victim 1 sent a direct payment of approximately $500 to LEE's MSB-1 account ending in 4820.

31. LEE's MSB-1 account ending in 4163 is the primary account through which LEE received direct payments from Victim 1. Between on or about December 29, 2019 and May 29, 2022, Victim 1 sent LEE approximately 41 payments totaling approximately $31,980 via LEE's MSB-1 account ending in 4163.

32. Between on or about August 10, 2018 and August 20, 2022, Victim 1 made approximately 498 payments totaling approximately $43,542.61 to Purple Garden through MSB-1.

<u>The FI-2 (formerly FI-1) Accounts</u>

33. LEE provided Victim 1 with a FI-1 account number ending in 4659 for direct payment for his services. Records provided by FI-2 (formerly FI-1) for this

account show the account is a business checking account for Gifted Life Coach LLC, and the authorized signer on the account is LEE.

34. LEE also maintains a personal bank account ending in 1434 at FI-2.

35. Between on or about January 30, 2020 and June 2, 2022, Victim 1 sent approximately $51,190.23 via wire to LEE's FI-2 (formerly FI-1) business checking account for Gifted Life Coach LLC ending in 4659.

36. On or about June 8, 2022, LEE opened a safe deposit box at a FI-2 branch in Haines City, Florida. Records from FI-2 show that LEE accessed the safe deposit box four times. LEE accessed the safe deposit box on or about June 8, 2022, June 15, 2022, June 22, 2022, and July 20, 2022.

37. In July 2022, LEE deposited three checks into his FI-2 accounts from Jewelry Business 2, located in Wayne, New Jersey. The first check was made payable to "John Lee" on or about July 5, 2022, in the amount of $65,500 and was deposited into the business checking account ending in 4659. A second check was made payable to "John Lee" on or about July 16, 2022, in the amount of $55,000 and was deposited into the personal checking account ending in 1434. The third check was made payable to "John Lee" on or about July 24, 2022, in the amount of $58,000, and was deposited into the personal checking account ending in 1434.

<u>The June 12, 2022 Package</u>

38. Video evidence shows Victim 1 enter and exit Victim 2's safe on at least four occasions. The first occasion Victim 1 entered Victim 2's safe was on or about June 12, 2022. Victim 1 was in Victim 2's safe for approximately 10 minutes. Victim

1 entered Victim 2's safe with an apparently empty left pant pocket and exited the safe with what appears to be a left pant pocket filled with contents.

39. An approximately 1.1-pound package was sent from Doha, Qatar via FedEx International Priority on or about June 12, 2022. The package was assigned tracking number 577908244667. According to the FedEx tracking details, this package was delivered to an address in Davenport, Florida on or about June 14, 2022. Further information provided by FedEx confirmed the package was delivered to 1070 Berry Lane, Davenport, Florida. This is the same address to which LEE directed Victim 1 to send the package. Additionally, the recipient's name on the package was "John Lee."

40. Based on information provided by Victim 1 through Victim 2's legal representatives, at this time I believe this package contained, among other items of jewelry, an approximately 42-carat white diamond, as well as two large canary diamonds.

41. The day after this package arrived, LEE accessed the safe deposit box at FI-2 at approximately 3:55 p.m.

<u>The July 18, 2022 Package</u>

42. Video evidence shows Victim 1 enter Victim 2's safe on or about July 6, 2022.

43. On or about July 18, 2022, an approximately 1.5-pound package was sent from Doha, Qatar via FedEx International Priority. The package was assigned tracking number 570356999376. According to the FedEx tracking details, this

package was delivered to an address in Davenport, Florida on or about July 20, 2022. Further information provided by FedEx confirmed the package was delivered to 1070 Berry Lane, Davenport, Florida. This is the same address to which LEE directed Victim 1 to send the package. Additionally, the recipient's name on the package was "John Lee."

44. Based on information provided by Victim 1 through Victim 2's legal representatives, at this time I believe this package contained, among other items of jewelry, an approximately 12-carat canary diamond.

45. The same day the package arrived, LEE accessed the safe deposit box at FI-2 at approximately 11:46 a.m.

Search of the FI-2 Safe Deposit Box

46. On or about September 15, 2022, agents executed a federal search warrant on the safe deposit box at FI-2. At the time of the execution of the search warrant, the safe deposit box was empty.

FI-3 Account

47. On or about July 1, 2022, LEE appeared in person with another individual, S.A. (believed to be LEE's son) to open a safe deposit box at an FI-3 branch in Cedar Knolls, New Jersey.

48. Records from FI-3 show that LEE accessed the safe deposit box four times. LEE accessed the safe deposit box on or about July 1, 2022, July 6, 2022, July 13, 2022, and July 16, 2022. The admission record for the safe deposit box shows only LEE accessed it.

49. As detailed further below, LEE sold items of jewelry to Jeweler Business 2 between on or about July 1, 2022 and July 29, 2022. LEE received four checks from Jeweler Business 2. One of the four checks issued to LEE from Jeweler Business 2 was in the amount of $50,000 and was deposited on or about July 1, 2022 into LEE's personal checking account at FI-3 ending in 9336.

The July 2, 2022 Package

50. Video evidence shows Victim 1 enter and exit Victim 2's safe on or about June 28, 2022. Victim 1 was in Victim 2's safe for approximately 17 minutes. Victim 1 entered Victim 2's safe with an apparently empty left pant pocket and exited the safe with what appears to be a left pant pocket filled with contents.

51. On or about June 29, 2022, an approximately 2.2-pound package was sent from Doha, Qatar via FedEx International Priority. The package was assigned tracking number 577908246306. According to the FedEx tracking details, this package was delivered to an address in Paramus, New Jersey on or about Saturday, July 2, 2022. Further information provided by FedEx confirmed the package was delivered to 50 Route 17 North Suite 135 Paramus, New Jersey. This is the same address to which LEE directed Victim 1 to send the package. Additionally, the recipient's name on the package was "John Lee."

52. Based on information provided by Victim 1 through Victim 2's legal representatives, at this time I believe this package contained, among other items of jewelry, a necklace consisting of approximately 150 diamonds.

53. The day before the package arrived, LEE opened a safe deposit box at FI-3. LEE accessed the safe deposit box on or about Wednesday, July 6, 2022.

The July 12, 2022 Package

54. As described above in paragraph 42, video evidence shows Victim 1 enter Victim 2's safe on or about July 6, 2022.

55. On or about July 6, 2022, an approximately 1-pound package was sent from Doha, Qatar via FedEx International Priority. The package was assigned tracking number 570356998910. According to the FedEx tracking details, this package was delivered to an address in Paramus, New Jersey on or about July 12, 2022. Further information provided by FedEx confirmed the package was delivered to 50 Route 17 North Suite 135 Paramus, New Jersey. This is the same address to which LEE directed Victim 1 to send the package. Additionally, the recipient's name on the package was "John Lee."

56. Based on information provided by Victim 1 through Victim 2's legal representatives, at this time I believe this package contained, among other items of jewelry, an approximately 20-carat pink diamond.

57. The day after the package arrived, LEE accessed the safe deposit box at FI-3.

Search of the FI-3 Safe Deposit Box

58. On or about November 1, 2022, agents executed a federal search warrant on the safe deposit box at FI-3. At the time of the execution of the search warrant, the safe deposit box was empty.

The Jewelry: The "Pink Diamond"

59. Victim 2 has confirmed that multiple items of jewelry were taken from a safe within Victim 2's residence. A listing of the jewelry includes at least 17 pieces containing precious metals and stones, such as diamonds, rubies, and sapphires, as well as watches. The jewelry had a purchase price value over $90 million.

60. In or about mid-August 2022, a jewel matching the description of a pink diamond stolen from Victim 2's safe was offered for sale by Subject 1, the owner of Jewelry Business 1, in New York, New York. A jeweler, Witness 1, became aware of the jewel being offered for sale when a potential buyer, Cooperating Witness 2 ("CW-2"), contacted Witness 1 about a diamond.

61. CW-2 told Witness 1 that another jeweler, Subject 3, took CW-2 to Subject 1 to see a diamond being offered for sale.

62. Based on the description of one of the diamonds offered for sale, Witness 1 believed he was familiar with the described jewel and that he knew the rightful owner of the diamond. Witness 1 contacted Victim 2 and confirmed the diamond had recently been stolen.

63. On or about November 14, 2022, agents received information from CW-2 that the pink diamond was slated to be auctioned by Auction House 1 ("AH-1"), located in New York, New York, in December 2022. CW-2 contacted a representative of AH-1 and requested a private viewing of the pink diamond.

64. On or about November 15, 2022, the representative of AH-1 met with CW-2 and presented the pink diamond. CW-2 confirmed the pink diamond was the

stone that belonged to Victim 2. Agents, who were in the vicinity during the showing of the pink diamond, took immediate possession of the stone as it was readily apparent the diamond was stolen property.

The Jewelry: The "Canary Diamond"

65. Between on or about July 1, 2022, and July 29, 2022, LEE sold items of jewelry to Jewelry Business 2, in Wayne, New Jersey. During that time, LEE showed Cooperating Witness 1 ("CW-1") a large canary diamond. CW-1 believes the canary diamond had been removed from a ring setting. LEE offered to sell the canary diamond to CW-1. CW-1 did not purchase the canary diamond. The description of the canary diamond provided by CW-1 is similar to the description of at least one of the canary diamonds stolen from Victim 2.

The Jewelry: The "Pear-shaped Diamonds"

66. On or about October 21, 2022, LEE approached CW-1 with six pear-shaped diamonds. LEE told CW-1 that he wanted to create a pendant for a necklace using the loose diamonds. LEE described the design he wanted made and asked CW-1 to create a rendering of the design. Additionally, LEE inquired about the length of time it would take to create the mold that would be used to make the pendant. LEE produced the pear-shaped diamonds so that CW-1 could measure them for a mold.

67. The jewelry stolen from Victim 2 included at least two pieces containing pear-shaped diamonds of varying sizes.

Interview of Subject 2

68. On or about November 21, 2022, a watch broker (Subject 2), spoke with law enforcement. Subject 2 told agents that he met LEE in approximately October or November 2020 through the owner of Jewelry Business 3 in New Jersey.

69. Between in or about October/November 2020 and in or about June 2022, Subject 2 and LEE conducted transactions involving watches and some diamonds.

70. LEE presented a certificate for each watch and/or stone that LEE presented to Subject 2 for purchase and/or trade. Subject 2 and LEE often bartered or traded items of jewelry, rather than conducting cash transactions.

71. Between in or about June 2022 and August 2022, LEE approached Subject 2 on several occasions offering extremely valuable and rare pieces of jewelry for trade. These items included, but were not limited to, an approximately 20-carat pink diamond, a necklace containing approximately 150 diamonds, and an approximately 42-carat white diamond.

72. LEE told Subject 2 that he acquired the jewelry from a wealthy female friend and wanted to trade the items for watches, gold bars and some cash. The following transactions, among others, with LEE occurred:

a. LEE sold the pink diamond, valued at approximately $31 million, to Subject 2 and others for approximately $8 million worth of watches and loose diamonds.

b. LEE sold the necklace containing approximately 150 diamonds as well as an approximately 42-carat white diamond to Subject 1 and Subject 2 for approximately $4 million in currency and/or an equivalent value of watches and jewelry.

## CONCLUSION

73. Based on the information set forth in this Affidavit, I submit that probable cause exists to believe that LEE, through false and fraudulent pretenses, representations, and promises, convinced Victim 1 to send via FedEx approximately $90 million worth of jewelry belonging to Victim 2 to him at addresses in Davenport, Florida and Paramus, New Jersey. Further, LEE transported or caused to be transported the jewelry in interstate commerce, knowing that the jewelry had been stolen and/or acquired by fraud.

74. Accordingly, I respectfully submit there is probable cause to believe that within the Middle District of Florida, and elsewhere, JOHN LEE has committed the crimes of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 2314 (interstate transportation of stolen goods).

Matthew Brooks
______________________________
Matthew L. Brooks, Special Agent, HSI

Special Agent Matthew L. Brooks attested to this affidavit by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

Sworn to and subscribed before me
this 21st day of November, 2022.

______________________________
Sean P. Flynn
United States Magistrate Judge

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
JOHN LEE

*Defendant*

Case No. 8:22-mj-2127-SPF

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* JOHN LEE, who is accused of an offense or violation based on the following document filed with the court:

❒ Indictment ❒ Superseding Indictment ❒ Information ❒ Superseding Information ☑ Complaint
❒ Probation Violation Petition ❒ Supervised Release Violation Petition ❒ Violation Notice ❒ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1343 - Wire fraud
18 U.S.C. § 1341 - Mail fraud
18 U.S.C. § 2314 - Interstate transportation of stolen goods

Date: 11/21/2022

*Issuing officer's signature*

City and state: Tampa, Florida

Sean P. Flynn, United States Magistrate Judge
*Printed name and title*

**Return**

This warrant was received on *(date)* ____________ , and the person was arrested on *(date)* ____________
at *(city and state)* ____________ .

Date: ____________

*Arresting officer's signature*

*Printed name and title*

AO 442 (Rev. 11/11) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

***(Not for Public Disclosure)***

Name of defendant/offender: John Lee / John P. Lee

Known aliases: Giovanni

Last known residence: 23 Plateau Avenue, Fort Lee, New Jersey 07024

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth: 09/02/1966

Social Security number: 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

Height: Weight:

Sex: Male Race:

Hair: Bald Eyes: Brown

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:

Complete description of auto:

Investigative agency and address: Federal Bureau of Investigation and Homeland Security Investigations

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*: